UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD V.,[1]<br>    *Plaintiff*,<br><br>v.<br><br>MARTIN O'MALLEY, COMMISSIONER<br>OF SOCIAL SECURITY,<br>    *Defendant*.[2] | No. 3:22-cv-1513 (VAB) |

# RULING AND ORDER ON PENDING MOTIONS

Ronald V. ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") under 42 U.S.C. § 405(g). The Commissioner denied Ronald V.'s application for Social Security Disability Benefits in a decision dated August 22, 2022. Ronald V. has timely appealed that decision.

Currently pending before the Court are Plaintiff's motion to reverse or remand his case for a hearing, ECF No. 26, and Defendant's motion to remand the Commissioner's decision, ECF No. 27.

---

[1] In light of the privacy concerns outlined in the District of Connecticut's Electronic Filing Policies and Procedures, for purposes of this Ruling and Order, the Plaintiff will be identified only by his first name and last initial. *See* United States District Court for the District of Connecticut, Electronic Filing Policies and Procedures 7-8 (Jan. 9, 2023).

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Consistent with Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley has been substituted for Kilolo Kijakazi as the Defendant in the caption of this decision, and the Clerk of Court is ordered to correct the caption on the docket accordingly. Fed. R. Civ. P. 25(d) ("The [public] officer's successor is automatically substituted as a party."); *see* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

For the reasons that follow, the Plaintiff's motion to remand is **GRANTED** and the Commissioner's motion to remand for further administrative proceedings is **DENIED**.

This case is **REVERSED** and **REMANDED** back to the Commissioner solely for the calculation and payment of benefits.

I.   FACTUAL AND PROCEDURAL BACKGROUND

A.   A Brief Summary of Ronald V.'s Medical History

In 1985, from a car accident, Ronald V. suffered an orbital fracture, which required three surgeries. Social Security Transcripts at 19, ECF No. 15-1 (Feb. 27, 2023).[3] He could not work from 1985 through 1987. *Id.* He then developed sinus and asthma issues, and has had issues with dust, fumes, and solvents. *Id.* After returning to work, in March of 1993, he suffered another injury, which resulted in back, neck, and knee pain ever since. *Id.*

B.   A Summary of this Case's Unique Procedural History

This case has a rather lengthy procedural history. Like that infamous court case in Dickens's *Bleak House*,[4] this case seems to have no clear ending, and depending on how this Court decides the matter, no clear end in sight.

During this time – from 1996 to the present – both courts within this District and the Commissioner either have remanded this case, or – in the case of the Commissioner – sought to have this case remanded to address errors in administrative proceedings. Time and time again, however, those remands have resulted in more remands because of other errors. The

---

[3] In this Ruling and Order, the Court deviates from its usual form of citing Social Security transcripts because the record covers over twenty years of notes and eight ALJ Hearing Decisions, but they are not necessarily compiled or docketed in order (filings for this case began before the CM/ECF system was implemented). The Court will include the ECF numbers for all the Social Security Transcript cites, and will also cite to transcripts or filings from claimant's earlier applications and appeals.

[4] *See* Charles Dickens, *Bleak House* (1852–53) (chronicling the prolonged travails of a probate case, *Jarndyce v. Jarndyce*); *id.* at Chapter 1 ("This scarecrow of a suit has, over the course of time, become so complicated, that no man alive knows what it means.").

Commissioner now requests yet one more remand to correct, by its own admission, the latest error. To place this all in context, the circumstances of this unique case, and the numerous remands and continuing errors are briefly summarized below.

On August 6, 1996, Ronald V. first filed an application for Title II disability benefits. Social Security Transcripts at 261, ECF No. 13-4 (Feb. 27, 2023). In that application, he alleged disability beginning on March 23, 1993, and a last insured date of December 31, 1998. *Id.* The initial denial of this application came on January 9, 1997. *Id*. Ronald V. then filed a request for reconsideration on February 26, 1997, which was denied on May 22, 1997. *Id.* On July 16, 1977, Ronald V. filed a request for an administrative hearing, which was granted *Id.*

On December 15, 1998, Ronald V. testified at hearing before Administrative Law Judge Barry Best. *Id.* at 262. On March 4, 1999, ALJ Best denied his claim. *Id.* Ronald V. timely requested review of the ALJ's determination and on February 15, 2000, the Appeals Council denied Ronald V.'s request for review. *Id.* Ronald V. appealed that claim to the United States District Court for the District of Connecticut. Social Security Transcripts at 128, ECF No. 15-1.

On March 9, 2001, U.S. Magistrate Judge William I. Garfinkel issued a Recommended Ruling on this appeal, one adopted by then U.S. District Judge Christopher F. Droney. Social Security Transcripts at 262, ECF No. 13-4. Following that ruling, on August 20, 2001, the Appeals Council returned the matter to the hearing office. *Id.* One year later, on August 20, 2002, a different ALJ, Deidre R. Horton, conducted the hearing. *Id.* Then, more than another year later, on August 28, 2003, ALJ Horton denied Ronald V.'s claim. *Id.* Ronald V. requested review of the ALJ's determination and, on January 3, 2004, the Appeals Council denied that request for review. *Id.*

Following an appeal again to this Court, on May 11, 2004 – nearly two years after the hearing – the Commissioner moved for a voluntary remand under 42 U.S.C. § 405(g). *Id.* On October 6, 2004, the Court remanded the claim back to the Commissioner for further review. Social Security Transcripts at 178, ECF No. 15-1. Then, on November 9, 2004, the Appeals Council returned the matter to the hearing office and on September 29, 2005, ALJ Horton conducted another hearing. Social Security Transcripts at 262–63, ECF No. 13-4. On January 24, 2006, several months after this hearing, and nearly four and a half years since the case had originally been sent back for the second hearing, ALJ Horton denied Ronald V.'s claim once again. *Id.* at 263. Ronald V. requested review of the ALJ's determination and on September 27, 2007, more than a year and a half after that ALJ's second denial of Ronald V's claim – his third denial by an ALJ – the Appeals Council accepted jurisdiction of Ronald V.'s claim and reversed the ALJ's decision. *Id.*

On February 27, 2008, another ALJ, Roy P. Liberman, conducted the fourth hearing on Ronald V.'s claim. *Id.* A few months later, on May 29, 2008, but several more months after the Appeals Council reversed the previous ALJ's decision, ALJ Liberman denied Ronald V.'s claim yet again. *Id.* Ronald V. requested review of the ALJ's determination and on November 10, 2009, more than two years after the Appeals Council's reversal of the third denial of Ronald V.'s claim, the Appeals Council denied review. *Id.*

Nearly two years later, on September 13, 2011, after an appeal had been filed with this Court, the Commissioner moved to remand the case back to the agency. Compl. ¶ 24, ECF No. 1 (Nov. 29, 2022). The Commissioner "determined that remand of this case is necessary because the [ALJ's] decision has a number of substantial deficiencies. Specifically, the ALJ's decision inadequately assessed and explained the assessment of plaintiff's subjective description of his

symptoms, and failed to address the functional limitations arising from Plaintiff's acknowledged respiratory difficulties." *Vece v. Astrue*, 3:04-CV-305 (AWT), Def.'s Assented to Mot. for Entry of J. at 1, ECF No. 38 (D. Conn. Sept. 13, 2011).

The Commissioner sought to have an ALJ "further evaluate all of plaintiff's medically determinable impairments with the assistance of supplemental medical expert testimony regarding the nature, severity, and limiting effects of those impairments both individually and in combination." *Id.* at 1–2. The Commissioner further wanted the ALJ to "reassess the credibility of plaintiff's subjective description of his symptoms, reassess plaintiff's residual functional capacity, [ ] obtain supplemental vocational expert testimony, if necessary, before proceeding through the rest of the sequential evaluation process and issuing a new decision." *Id.* At that time, counsel for Ronald V. consented to that remand. *Id.*

As a result of the Commissioner's request to remand the case back to the agency, in addition to Ronald V.'s consent to do so, on October 14, 2011, the Court remanded the case back to the Commissioner. Social Security Transcripts at 263, ECF No. 13-4. More than a year and a half later, on April 4, 2013, another ALJ – this case's fourth different one, Robert A. DiBiccaro held a hearing on Ronald V.'s remanded claim, and then denied him benefits yet again on June 25, 2013. *Id.*

On September 25, 2013, Ronald V. once again sought relief in federal court, his third such lawsuit in pursuit of disability benefits. *See Vece v. Colvin*, 3:13-CV-1413 (DFM), Compl., ECF No. 1 (D. Conn. Sept. 25, 2013). Following the filing of various motions, on September 9, 2014, nearly a year after Ronald V. initiated his latest lawsuit, the Commissioner moved to remand the case back to the agency yet again. Social Security Transcripts at 263, ECF No. 13-4. Similar to the Commissioner's previous remand request of more than three years ago, the

Commissioner wanted "further consideration" of the "claimant's maximum residual functional capacity," to "evaluate the claimant's subjective complaints," and "if warranted by the expanded record, obtain evidence from a vocational expert to clarify the assessed limitations on the claimant's occupational base." Social Security Transcripts at 14, ECF No. 13-1 (Feb. 27, 2023). Once again, counsel for Ronald V., on his client's behalf, agreed to the remand.

Following this remand, on November 2, 2015, more than a year after it was first requested, and now nearly twenty years after Ronald V. first filed an application for disability benefits, ALJ Dibiccaro held another hearing, and on March 2, 2016, denied Ronald V.'s claim yet again. Social Security Transcripts at 263, ECF No. 13-4.

On June 20, 2016, Ronald V. filed his fourth lawsuit in federal court to obtain disability benefits. Social Security Transcripts at 34, ECF No. 13-1. On December 6, 2018, U.S Magistrate Judge Robert A. Richardson granted Ronald V's motion to remand the case, concluding that "the ALJ improperly discredited plaintiff's allegations of disabling pain, such that remand for further proceedings is necessary." *Vece v. Colvin*, 3:16-CV-967 (RAR), Ruling on Pl.'s Mot to Reverse at 25, ECF No. 27 (D. Conn. Dec. 6, 2018) (citations omitted). Significantly, Judge Richardson noted that: "The 1,680 pages of medical records, including multiple testimonies from the plaintiff, led to the ALJ's finding of at least nine severe impairments and sufficiently support plaintiff's repeated complaints of serious pain." *Id.*

Following this remand, on December 20, 2019, more than year after Judge Richardson's decision, Ronald V. received his seventh hearing on his disability claim. At that hearing, the fifth different ALJ to hear his claim, Ronald J. Thomas, presided. *See* Social Security Transcripts at 64, ECF No. 13-1. On September 2, 2020, ALJ Thomas denied Ronald V.'s claim again. *Id.* On November 10, 2022, Ronald V. sought relief in this Court once more.

More than a year and a half later, on January 18, 2022, the Commissioner sought to remand the case back to the agency, promising to "follow the five-step sequential evaluation, including, if reached, a reconsideration of Plaintiff's residual functional capacity," and "ensure that vocational expert evidence, if required, complies with agency policy . . . ." *Vece v. Saul*, 3:20-CV-1703 (VAB), Def.'s Mem in Support of Mot. for Entry of J. at 1-2, ECF No. 25-1 (D. Conn. Jan. 18, 2022). In the Commissioner's view, "[t]he purpose of remand is to correct the errors in the ALJ's step-five finding, which may be accomplished in various ways." *Id.* at 3. And because Ronald V. would no longer agree to a further full remand and *de novo* review by the Commissioner, but instead sought remand only for payment of benefits, the Commissioner argued that "should the agency on remand determine this evidence is sufficiently developed, the agency should be permitted to resolve the discrepancies in the current decision. . . . Ultimately, plaintiff would have the right to return to District Court if dissatisfied with any final decision of the Commissioner on remand." *Id.* at 3–4.

On March 1, 2022, Judge Richardson issue a Recommended Ruling granting the Commissioner's motion to remand, and denying as moot Ronald V's motion to remand. Social Security Transcripts at 99–100, ECF No. 13-1. At that time, Judge Richardson felt "constrained to conclude that a remand for further evidentiary proceedings would serve a purpose and would be valuable. Specifically, an evidentiary hearing for the purpose of obtaining proper testimony from a [vocational expert] that provides accurate and supported job incidence numbers." Social Security Transcripts at 98, ECF No. 13-1.  Judge Richardson "instructed" the ALJ "to obtain testimony from a VE to properly identify the jobs plaintiff can perform, if any, and the incidence numbers of those jobs." *Id.* at 98–99. Judge Richardson further "recommended that upon remand this matter be required to be heard by an ALJ within 75 days of the order of the District Court . .

. [and] if benefits are denied, a final ruling of the Agency must be provided no later than 75 days from the ALJ's hearing." *Id.* at 99. "[F]ailure to meet these deadlines should result in this matter being remanded for a calculation of benefits." *Id.* (citation omitted).

On March 21, 2022, this Court adopted Judge Richardson's Recommended Ruling, and stated the following: "given the significant length of time that [Ronald V.'s] application has been pending, [Ronald V.] shall receive a hearing before an Administrative Law Judge ("ALJ") within **75 days** of this order. Social Security Transcripts at 88, ECF No. 13-1. If the ALJ denies [Ronald V.'s] application for benefits, a final ruling of the agency must be provided no later than **75 days** after the ALJ's hearing. Failure to meet these deadlines shall result in the remand of this matter for a calculation of benefits." *Id.* (citing *Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004)).

Within this seventy-five day deadline, on June 1, 2022, another ALJ, John T. Molleur, the sixth different ALJ assigned to this case, held a hearing, and on August 22, 2022, also within its applicable seventy-five day deadline, issued a decision denying Ronald V.'s disability claim. Ronald V. once again timely filed an appeal to this Court, and on November 29, 2022, sought to reverse the Commissioner's decision. *See* Compl., ECF No. 1.

On September 11, 2023, nearly a year after ALJ Molleur's decision, and several months after Ronald V. initiated this lawsuit, the Commissioner has moved to remand the case yet again. *See* Def.'s Mot. for Entry of J. at 6, ECF No. 27 (Sept. 11, 2023) ("Def.'s Mot."). While the June 2022 hearing addressed many of the issues outlined in the Court's previous order, in assessing Ronald V.'s residual functional capacity, the ALJ failed to consider the medical opinions of Dr. Sage Sikand and Dr. John Axline because of an omission "from the administrative record." *Id.* at 4.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court reviewing a disability determination "must determine whether the Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)); *see also Moreau v. Berryhill*, 3:17-CV-396 (JCH), 2018 WL 1316197, at *3 (D. Conn. Mar. 14, 2018) ("[T]he court may only set aside the ALJ's determination as to social security disability if the decision 'is based upon legal error or is not supported by substantial evidence.'" (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998))).

"Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (*per curiam*) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran*, 569 F.3d at 112 (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)). It is a "very deferential standard of review – even more so than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448 (citing *Dickinson v. Zurko*, 527 U.S. 150, 153 (1999)).

## III.     DISCUSSION

Because this case must be remanded back to the Commissioner, as both sides concede, there is just one issue to decide: whether this case should be reversed and remanded for the calculation and award of benefits, or reversed and remanded for further administrative proceedings. "Reversal and entry of judgment for the claimant is appropriate only 'when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose.'" *Baez v. Astrue*, 08-CV-5337 (DLC), 2009 WL 2151828, at *3

(S.D.N.Y. July 20, 2009) (citing *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980)). The relevant inquiry thus is whether there is "persuasive proof of disability" in the record, such that "further evidentiary proceedings would serve no purpose." *Id.*

As both parties agree, the record before ALJ Molleur did not have the benefit of the testimony of Dr. Sage Sikand and Dr. John Axline, and the issue is whether a finding of disability and an award of benefits can be made without remanding the case to have ALJ Molleur (or his successor ALJ) review this evidence.

The Commissioner argues that: "[]w]ithout a fully articulated evaluation of the medical opinions of Dr. Axline and Dr. Sikand alongside the other evidence of record, and explanation of Plaintiff's functioning, the issue of whether Plaintiff was disabled under the Act cannot be accurately evaluated." Def.'s Mot. at 6. The Commissioner argues that there is "conflicting and inconsistent evidence that warrants resolution through further administrative proceedings."[5] *Id.*

Ronald V. objects to yet another remand for more review, and instead seeks remand for the sole purpose of awarding benefits. Pl.'s Obj. to Mot. at 1, ECF No. 28 (Sept. 13, 2023). Ronald V. argues that the record in its entirety, including the more than two decades worth of various findings and other record evidence, is sufficient to consider him disabled. *See id.* at 8. More specifically, a previous review of his functionality by ALJ Thomas, which weighed the very testimony not considered by ALJ Molleur, and concluded that he had "the residual functional capacity to perform[ing] sedentary work as defined in 20 C.F.R. 404.1567(a)," and the other evidence in the record, including the testimony of vocational expert, Diane Durr, is sufficient to make the decision, and determine Ronald V.'s disability.

The Court agrees.

---

[5] Significantly, the precise nature of this "conflicting and inconsistent evidence" is not clear, especially given the findings in the various proceedings over the course of this very lengthy matter.

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*[6] Here, the determination of Ronald V.'s disability application turns on his ability to perform work through the date of last insured, December 31, 1998.

On the record before him, ALJ Molleur concluded that Ronald V. could perform light work, and that his "ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations." Social Security Transcripts at 24, ECF No. 15-1. As a result, "[t]o determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id.* Given the limitations found by ALJ Molleur of light work with "additional limitations, the vocational expert, Diane Durr, determined that Ronald V. could perform three jobs (1) cashier; (2) price marker; and (3) office helper. *Id.*

But, while ALJ Molleur determined that Ronald V. could meet the light work requirements, and so directed Ms. Durr to consider that requirement in determining whether jobs existed in the national economy for Ronald V., as the Commissioner concedes, that determination came without the benefit of an analysis of the testimony of Dr. Axline and Sikand.

---

[6] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

And, in addition to ALJ Thomas, other ALJs – including ALJ Horton in two different rulings, determined that Ronald V. could not work above the sedentary level,[7] with the testimony of Drs. Axline and Sikand included in their analysis. *See Vece v. Saul*, 3:20-CV-1703 (VAB), Social Security Transcripts at 628, ECF No. 15 (D. Conn. Apr. 30, 2021) ("[G]iven the testimony of Dr. Sikand, the claimant's functional capacity is reduced to the sedentary level."); *see also Vece v. Saul*, 3:20-CV-1703 (VAB), Social Security Transcripts, Supp. Part 2 at 356, ECF No. 15-1 (D. Conn. Apr. 30, 2021) (examining Ronald V.'s residual functional capacity "to perform the full range of sedentary work" while recognizing "nonexertional limitations, including postural, safety and environmental limits . . . .").[8]

As a result, based on this record, one developed by numerous ALJs and which includes analysis of the impact of the testimony of Drs. Axline and Sikand, there is no need for a remand to determine the specific impact of their testimony in that respect. *See Selian v. Saul*, 3:19-CV-1388 (AVC), Ruling on Pl.'s Mot. to Reverse at 28, ECF No. 20 (D. Conn. Jul. 28, 2020) ("[T]here is no purpose for remanding the case for rehearing unless there is further evidence to be offered." (citing *Carroll v. Sec. of Health and Human Servs.*, 705 F.2d 638, 644 (2d Cir. 1983))); *see also Balsamo*, 142 F.3d at 82 ("Balsamo applied for disability benefits more than four years ago, a longer period than in *Carroll*. As in *Carroll*, '[a] remand, potentially followed

---

[7] Sedentary work is a lower level of physical exertion than light work; indeed, it is the lowest level of physical exertion specified in the Social Security regulations. 20 CFR § 404.1567 (defining sedentary work as requiring the lifting of fewer pounds, and less physical exertion than the light work, medium work, heavy work, and very heavy work physical exertion requirements).

[8] Notably, ALJ DiBiccaro's 2016 decision further limited Ronald V.'s work capacity to no more than sedentary work, after determining in a 2013 decision that he could be limited to no more than light work. *Vece v. Saul*, 3:20-CV-1703 (VAB), Social Security Transcripts, Supp. Part 2 at 656, ECF No. 15-1 (D. Conn. Apr. 30, 2021) (seeking vocational guidance "[t]o determine the extent to which these limitations erode the unskilled light occupational base, through the date last insured . . . ."). Moreover, even the first ALJ to review Ronald V.'s application, ALJ Best – although his findings were deficient in other respects – analyzed Ronald V.'s disability application based on a capacity to perform no more than sedentary work. *See Vece v. Saul*, 3:20-CV-1703 (VAB), Social Security Transcripts at 37, ECF No. 15 (D. Conn. Apr. 30, 2021) ("[Ronald V.]'s capacity for sedentary work was diminished by significant non-exertional limitations which made it impossible for him to perform tasks requiring overhead reaching and work in exposure to environmental irritants or unprotected heights.").

by another appeal, could well delay the payment of benefits to which [the claimant] appears to be entitled for still further years.'" (internal citations omitted)).

On this record, Ronald V. could do no more than satisfy the lowest physical exertion requirement of sedentary work, in contrast to ALJ Molleur's finding of light work.

The physical exertion requirement of sedentary work alone, however, does not resolve the issue of Ronald V.'s ability to work, or be determined disabled without remand for additional analysis by an ALJ. Because as previous ALJs found, specifically those who found that Ronald V. could do no more than sedentary work: "If the claimant were capable of performing the full range of sedentary work, a finding of 'not disabled' would be directed by the Medical-Vocational Guidelines." *Vece v. Saul*, 3:20-CV-1703 (VAB), Social Security Transcripts at 747, ECF No. 15 (D. Conn. Apr. 30, 2021). But ALJ Molleur already determined that Ronald V.'s "ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations." Notice of filing of Unofficial Text-searchable Copy of Certified Administrative Record at 25, ECF No. 16-1 (Mar. 7, 2023). Under his analysis, Ronald V. "had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; degenerative joint disease of the right knee and meniscal tear, and obstructive airway disorder/asthma." *Id.* at 18. Above and beyond any applicable lifting and walking and standing restrictions, Ronald V. "needed to avoid climbing ladders, ropes, and scaffolds. . . . needed to avoid work at unprotected heights and avoid work requirements with higher concentrations of dusts, fumes, gases, and other pulmonary irritants." *Id.* at 19.

These additional findings by ALJ Molleur with respect to Ronald V.'s physical limitations then need to be applied to the sedentary work context – in light of the inclusion of the previously omitted testimony – which involves "lifting no more than 10 pounds at a time, and

occasionally lifting or carrying articles like docket files, ledgers, and small tools . . . [as well as] a certain amount of walking and standing . . . ." 20 CFR 404.1567(a).

In any event, ALJ Molleur had to rely on the testimony of a vocational expert to determine "whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity." *Id.* Thus, the final issue as to the scope of the remand is whether the testimony of the vocational expert, Diane Durr, provides "persuasive proof of disability" because Ronald V. has a physical work requirement of no more than sedentary work with "additional limitations." Based on this record, and nothing more, the answer to that question is yes.

In addition to performing a vocational analysis as to specific limitations on Ronald V.'s capacity to work under light work requirements, Ms. Durr also answered the question as to what would happen if the same restrictions were in place for Ronald V. if he could only undertake sedentary work:

> Q. All right. If you were to eliminate the reaching limitation and modify the second hypothetical with limiting, with – the person is limited to lifting and carrying no more than 10 pounds occasionally, standing and walking each up to two hours in an eight-hour workday, sitting up to eight hours in an eight-hour workday, can you, can you identify unskilled work that would be feasible?
>
> A: Lifting up to 10 pounds, Judge?
>
> Q: Yes.
>
> A: And sitting for eight. So that would place us into the ---
>
> Q: Well, sitting for six ---
>
> A: --- sedentary category.

> Q: -- sitting for six out of eight. Essentially –
>
> A: Yeah.
>
> Q: -- it's at sedentary –
>
> A: Oh, total of six out of eight.
>
> Q: --with the same additional restrictions as –
>
> A: Okay. No jobs, Judge.

As a result, there is no need for a remand to determine whether the change of physical work requirement from light to sedentary, based on the inclusion of testimony from Drs. Axline and Sikand, would change the analysis. The vocational expert already testified about what would happen if Ronald V. were in the sedentary work category: there would be no jobs for him. *See, e.g.*, *Dolcetti v Berryhill*, 3:17-CV-1820, (VAB), 2019 WL 2402951 at *13, (D. Conn. June 7, 2019) ("Because no other evidence supports the ALJ's determination on the number of jobs available to Mr. Dolcetti, the finding that he is no longer disabled is not supported by substantial evidence in the record." (citation and internal quotation marks omitted)); *Morris v. Berryhill*, 313 F. Supp. 3d 435, 441 (W.D.N.Y. 2018) ("In answer to that hypothetical, the vocational expert testified that no jobs existed in the national economy which could be performed by such an individual.").

Thus, Ronald V. could not work, would be deemed disabled under the Social Security's own regulations, and only a remand for the calculation and awarding of benefits is necessary. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand."); *see also Dolcetti*, 2019 WL 2402951, at *13 ("Given the record and the deficiencies in the ALJ's decision identified above, rehearing is not warranted, and instead this case will be remanded solely for the calculation and

payment of benefits."); *Morris*, 313 F.Supp.3d at 441 (The "record is clear that if the opinion of the treating physician controls, there are no jobs in the national economy that plaintiff can perform. . . . As such additional proceedings would serve no proper purpose, and remand for the calculation and payment of benefits is warranted."); *cf. Cohen v. Berryhill*, 272 F. Supp. 3d 779, 784 (D.S.C. 2017) ("[T]he disability issue in dispute in this appeal is quite a narrow one. . . . A finding that the claimant was capable of sedentary work . . . would result in a finding of disability.").[9]

Accordingly, this case will be remanded back to the Commissioner solely for the calculation and payment of benefits.

IV.   CONCLUSION

For the reasons stated above, the Plaintiff's motion to remand is **GRANTED** and the Commissioner's motion to remand for further administrative proceedings is **DENIED**.

This case is **REVERSED** and **REMANDED** back to the Commissioner solely for the calculation and payment of benefits.

---

[9] Notably, while not the underlying basis for this opinion, consistent with the Second Circuit's decision in *Balsamo*, other courts in the Second Circuit have addressed more directly the prejudice to the claimant from a protracted delay. *Balsamo*, 142 F.3d at 82 ("[A] remand, potentially followed by another appeal, could well delay the payment of benefits to which the claimant appears to be entitled for still further years."); *see Selian v. Saul*, 3:19-CV-1388 (AVC), Ruling on Pl.'s Mot. to Reverse at 82, ECF No. 20 (D. Conn. July 28, 2020) ("[A]fter 13 years of hearings and appeals which resulted in hardship to the plaintiff, and where the medical evidence does not support the ALJ's findings and it is unlikely that new evidence will arise that would support the ALJ's findings, remand for a new hearing is unwarranted and would serve no other purpose than to add further delay to this already protracted litigation."); *Torres v. Colvin*, 2017 WL 1734020, at *4 ("Plaintiff's claim has been pending for more than seven years and was already remanded by the District Court once before. I am not persuaded that the Commissioner deserves a third opportunity to carry her burden."); *Cohen*, 272 F. Supp. 3d at 784 ("Under these circumstances, reversal and remand to the agency to address for a third time the issues raised in this appeal would be an act of futility."); *Lagasse v. Berryhill*, No. 3:16-CV-1184 (WWE), 2017 WL 2984310, at *5 (D. Conn. July 12, 2017) ("[T]he Court should consider the hardship to the claimant of further delay by the administrative proceedings[.]"); *Carlantone v. Colvin*, No. 14-CV-8204 (DF), 2015 WL 9462956, at *11 (S.D.N.Y. Dec. 17, 2015) (remanding where prolonged administrative proceedings presented a hardship to the plaintiff whose original claim occurred 21 years before the decision and where most of the medical evidence weighed in the plaintiff's favor).

The Clerk of Court is respectfully directed to close this case.

SO ORDERED this 29th day of March, 2024 at New Haven, Connecticut.

/s/ Victor A. Bolden

Victor A. Bolden
United States District Judge